**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043

*Plaintiff*,

v.

UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

and

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT
500 12th Street, SW
Washington, D.C. 20024

*Defendants*.

CASE NO.____________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Muslim Advocates brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* for declaratory, injunctive, and other appropriate relief to compel the disclosure and release of documents from Defendants U.S. Department of Justice ("DOJ") and U.S. Immigration and Customs Enforcement ("ICE") (collectively, "Defendants").

**PRELIMINARY STATEMENT**

1. Muslim Advocates is a not-for-profit legal advocacy and educational organization. On January 11, 2018, Plaintiff submitted a FOIA Request (the "Request") for materials related to denaturalization efforts by the federal government, including but not limited to "Operation Janus," a joint initiative between DOJ and the U.S. Department of Homeland Security ("DHS"), where

federal agencies reviewed the files of naturalized citizens for the purpose of identifying misrepresentations in their naturalization applications that could render American citizens eligible for denaturalization. The Request was sent to the DOJ's National Security Division ("NSD"), DOJ's Civil Division ("Civil Division"), DHS, and DHS's component agency, the U.S. Citizenship and Immigration Services ("USCIS"). *See* Ex. A. On January 25, 2018 DHS referred the Request to its component agency, ICE. On February 13, 2018, Muslim Advocates submitted a revised FOIA request to ICE after the agency requested clarification on the scope of the request (hereinafter, the "Second ICE Request"). *See* Ex. C.

2. As of this filing, Defendants have wholly failed to comply with their obligations under FOIA: Defendant DOJ wrongfully denied Plaintiff's Request and has thereafter failed to adjudicate Plaintiff's administrative appeal of the Civil Division's denial within the time limit. Defendant ICE has outright refused to process either Muslim Advocates' initial Request or the Second ICE Request and has likewise failed to respond to any appeals. To date, neither of the Defendants have produced a single document in response to Plaintiff's FOIA requests. [1]

3. The interests at stake in government transparency on the issue of denaturalization could not be more important. An aggressive pursuit of denaturalization by the federal government is unprecedented in recent history and has the potential to disrupt thousands of U.S. citizen lives and families.[2] The documents and information Muslim Advocates seeks would help provide much-

[1] Neither NSD nor USCIS are named in this action. NSD issued a final determination on Muslim Advocates' request on July 6, 2018. Muslim Advocates is currently in discussions with USCIS regarding the production of responsive documents.

[2] *See, e.g.,* Adiel Kaplan, *Miami grandma targeted as U.S. takes aim at naturalized immigrants with prior offenses*, MIAMI HERALD (July 9, 2018); Masha Gessen, *In America, Naturalized Citizens No Longer Have an Assumption of Permanence*, THE NEW YORKER (June 18, 2018).

needed transparency with respect to the means, ends, and enforcement patterns of the government's ongoing denaturalization efforts.

4. Plaintiff brings this action to compel Defendants to immediately process and release to Plaintiff all responsive records that they have unlawfully withheld.

**JURISDICTION AND VENUE**

5. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346. This Court also has subject matter jurisdiction over this action and personal jurisdiction over all parties pursuant to 5 U.S.C. § 552(a)(4)(B).

6. Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e), because a substantial portion of the events giving rise to this action occurred in this District, and because Defendants maintain records and information subject to the Requests in this District.

**PARTIES**

7. Plaintiff Muslim Advocates is a non-profit organization with offices in Washington, D.C. and Oakland, California that works to ensure civil rights for Americans of all faiths through legal advocacy, litigation, policy engagement, and civic education. Muslim Advocates also regularly disseminates information to the public through its website, social media platforms, and email distribution lists. Muslim Advocates is a "person" within the meaning of 5 U.S.C. § 551(2).

8. Defendant U.S. Department of Justice is the United States agency responsible for the enforcement of law and in particular, the prosecution of civil denaturalization suits. The Civil Division is a component of DOJ and a direct recipient of the Request at issue. The Civil Division litigates cases related to immigration enforcement on behalf of the United States, including

prosecuting denaturalization lawsuits. DOJ has possession of and control over the documents and information requested by Plaintiff.

9. Defendant Immigration and Customs Enforcement is a component of the U.S. Department of Homeland Security and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is the component agency of DHS that enforces U.S. immigration law. ICE has possession of and control over the documents and information requested by Plaintiff.

**STATUTORY BACKGROUND**

10. The Freedom of Information Act provides that any member of the public may request records from a United States agency. Upon receipt of a FOIA request, an agency must determine within 20 business days—or, in "unusual circumstances," by 30 business days—whether it will comply with a request and notify the requestor of its determination and reasoning in writing. 5 U.S.C. § 552(a)(6)(A)(i)-(B)(i). This determination must also timely indicate the scope of the documents the agency intends to produce and the exemptions, if any, that it will apply to withhold documents.

11. In response to a FOIA request, an agency, after engaging in a reasonable search for responsive records, including of any field offices that may possess relevant materials, must disclose in a timely manner all records that do not fall within nine narrowly construed statutory exemptions. 5 U.S.C. § 552 (a)(3)(A), (C), (b)(1)-(9).

12. Typically, a requester under FOIA must appeal agency action administratively before commencing litigation. However, if the agency has failed to abide by its obligations and issue a determination on the request or a determination on an administrative appeal within the statutory timeframe, the administrative appeal process is considered exhausted. 5 U.S.C. § 552(a)(6)(C)(i).

13.     Upon complaint, a district court can enjoin an agency from withholding records and order production of records improperly withheld. 5 U.S.C. § 552(a)(4)(B).

## FACTUAL BACKGROUND

14.     Historically, denaturalization has been used sparingly and almost exclusively against perpetrators of war crimes, such as members of the Schutzstaffel ("SS"), Nazi concentration camp guards, and other genocidaires who lied on their U.S. immigration documentation.[3] However, systematic denaturalization has come to the fore occasionally: during the Red Scare, the government initiated a program of denaturalization proceedings against suspected Communists.[4] Likewise, during World War II, DOJ pursued denaturalization against German Americans and against Indian Americans following the Supreme Court's 1923 decision in *United States v. Thind*, which held that Indians were ineligible for citizenship because of their race.[5]

15.     Seventy years after the Red Scare, the federal government has mounted a concerted campaign to increase the use of denaturalization to strip foreign-born U.S. citizens of their citizenship and deport them, regardless of how long they have resided in the country and the families and lives they have built.

---

[3] *See, e.g.,* Linda Greenhouse, *Justices Revoke U.S. Citizenship of a Nazi Guard*, N.Y. TIMES (Jan. 22, 1981), at A1, *available at* https://www.nytimes.com/1981/01/22/us/justices-revoke-us-citizenship-of-a-nazi-guard.html.
[4] Ruth Ellen Wasem, *Trump administration now has naturalized citizens in its sights*, THE HILL (July 17, 2018), http://thehill.com/opinion/immigration/396923-trump-administration-now-has-naturalized-citizens-in-its-sights.
[5] *See* Kritika Agarwal, *Stripping Naturalized Immigrants of Their Citizenship Isn't New,* SMIHTSONIAN MAG (Jul. 24, 2018), https://www.smithsonianmag.com/history/stripping-naturalized-immigrants-their-citizenship-isnt-new-180969733/.

16. In 2016, DHS launched Operation Janus, an effort coordinated with DOJ, where immigration agencies reviewed the files of hundreds of thousands of naturalized citizens. Through Operation Janus, DHS identified 315,000 cases where "some fingerprint data was missing from the centralized digital fingerprint repository."[6]

17. The current administration has increased and intensified these denaturalization efforts.

18. On September 19, 2017, DOJ announced that it had filed "denaturalization complaints" in the Middle District of Florida, District of Connecticut, and District of New Jersey, alleging that each defendant had obtained his U.S. citizenship fraudulently.[7] The defendants are two men of Pakistani origin and one man of Indian origin.[8] Each of these cases were referred to DOJ for prosecution as a result of Operation Janus. According to the DOJ press release, these cases resulted from "an ongoing collaboration between [DHS and DOJ] to investigate and seek denaturalization proceedings…."[9] On January 5, 2018, a judge in the District Court of New Jersey ordered a citizen denaturalized as part of Operation Janus.[10]

19. Those prosecutions are the tip of the iceberg. In January 2018, DOJ announced in that USCIS intends to refer approximately 1,600 cases to DOJ for prosecution.[11] As part of this

---

[6] Press Release, Dep't of Justice Off. Pub. Affairs, *Justice Department Secures First Denaturalization As a Result of Operation Janus* (Jan. 9, 2018), https://www.justice.gov/opa/pr/justice-department-secures-first-denaturalization-result-operation-janus.

[7] Press Release, Dep't of Justice Off. Pub. Affairs, United States Files Denaturalization Complaints in Florida, Connecticut and New Jersey Against Three Individuals Who Fraudulently Naturalized After Having Been Ordered Deported Under Different Identities (Sept. 19, 2017), https://www.justice.gov/opa/pr/united-states-files-denaturalization-complaints-florida-connecticut-and-new-jersey-against.

[8] *Id.*

[9] *Id.*

[10] Press Release, Dep't of Justice Off. Pub. Affairs, *supra* note 6.

[11] *Id.*

growing, coordinated interagency effort, in June 2018, DHS announced the institution of a new office within USCIS dedicated to reviewing and referring cases to DOJ for denaturalizing and deporting U.S. citizens.[12]

20. Transparency about this initiative is of the utmost concern to the American public. As of 2015, there are 19.8 million naturalized U.S. citizens, with 500,000 to 750,000 new citizens naturalized each year. The growing government policy of actively seeking denaturalization of everyday Americans effectively renders naturalized citizens "second-class"[13] and has the potential to disrupt lives and families in violent and unpredictable ways. This effort is therefore of exceptional importance to these citizens, their families, their communities, and the American public at large.

**A. PLAINTIFF'S FOIA REQUESTS**

21. Plaintiff submitted the Request to NSD, the Civil Division, DHS, and USCIS on January 11, 2018. *See* Ex. A.

22. The Request seeks records concerning policies and procedures relating to how DHS and its component agencies, including USCIS, identify denaturalization cases and refer them to DOJ for prosecution, interagency guidance shared between DHS, USCIS, and/or DOJ pertaining to denaturalization complaints and/or Operation Janus, and DOJ guidance and memoranda regarding denaturalization complaints and Operation Janus. The Request further seeks non-identifying information reflecting the countries of origin and/or ethnic background of individuals identified as candidates for denaturalization complaints.

---

[12] Nicole Rojas, *New USCIS Office Aims to Strip U.S. Citizenship from Naturalized Americans for Lying on Application*, NEWSWEEK (June 13, 2018), *available at* http://www.newsweek.com/new-uscis-office-aims-strip-us-citizenship-naturalized-americans-lying-975484.

[13] Gessen, *supra* note 2.

23. Muslim Advocates sought a determination on the Request within ten calendar days pursuant to 28 C.F.R. § 16.5(d)(4). Muslim Advocates also sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), (iii) because disclosure of documents pertaining to denaturalization and Operation Janus is in the public interest and because Muslim Advocates is a member of the news media. *See* Ex. B.

## B. AGENCY RESPONSE AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

### 1. Defendant DOJ's Response

24. On January 18, 2018, DOJ's Civil Division sent a letter via email acknowledging receipt of the Request in their office on January 11, 2018. *See* Ex. B. The letter denied expedited processing. It also found that Muslim Advocates is a member of the news media and reserved decision on the grant of a full fee waiver until after it processed the request. Under 5 U.S.C. § 552(a)(6)(B)(iii)(I), the Civil Division invoked a 10-day extension beyond the typical 20-day statutory limit to respond to Plaintiff's Request.

25. The following day, on January 19, 2018, the Civil Division sent a letter via email to Plaintiff denying in full Plaintiff's request for records related to Operation Janus, invoking 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)"), claiming that the records had been compiled for law enforcement purposes the release of which would be "reasonably expected" to interfere with enforcement. The Civil Division further invoked 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"), claiming that the requested documents would disclose law enforcement investigation and prosecution techniques and procedures. *See id.* The Civil Division letter was conclusory and provided no description of the relevant law enforcement investigation and prosecution techniques and procedures. The Civil Division did not explain why all of the documents were covered by the

claimed exemptions or how their disclosure would present a risk of circumvention of the law.[14] As such, the Civil Division's withholding of responsive documents was improper.

26. This letter advised Plaintiff that they could file an administrative appeal to OIP within ninety days of this determination.

27. On January 29, 2018, in light of this complete denial, Plaintiff sent a letter to the Civil Division requesting a *Vaughn* Index, in which the government provides an itemized index of the withheld portions of documents justifications for each withheld document. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

28. The Civil Division did not respond to this request.

29. On April 5, 2018, Plaintiff timely submitted an administrative appeal of the Civil Division's denial to DOJ's Office of Information Policy ("OIP"). OIP was required to respond to this appeal within 20 days. 5 U.S.C. § 552(a)(6)(A)(ii).

30. On April 18, 2018, Muslim Advocates received a letter from OIP stating that the appeal had been received in their office on April 9, 2018.

31. Accordingly, a response on this appeal was due to Muslim Advocates by April 30, 2018.

32. As of this filing, Plaintiff has not received the required determination from OIP regarding its appeal of the Civil Division's determination. Undersigned counsel called OIP on June

---

[14] *See, e.g., N.L.R.B v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 235 (1978) ("Where an agency fails to demonstrat[e] that the . . . documents [sought] relate to any ongoing investigation or . . . would jeopardize any future law enforcement proceedings, Exemption 7(A) would not provide protection to the agency's decision.") (internal quotation marks omitted); *See PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993) ("An agency that chooses to withhold requested information bears the burden of justifying its decision.").

19, 2018 and was told by an agency official that there are no updates on the status of Muslim Advocates' appeal.

33. A complete copy of Muslim Advocates' correspondence with DOJ is attached hereto as Exhibit B.

**2. Defendant ICE's Response**

34. On January 25, 2018, DHS informed Muslim Advocates by letter sent via email that they had transferred the Request to Defendant ICE. *See* Ex. C.

35. On February 7, 2018, ICE sent a letter via email acknowledging receipt of the Request in their office on January 25, 2018.

36. On February 5, 2018, the ICE FOIA Office acknowledged receipt of the Request, invoking a 10-day extension and granting Muslim Advocates' request for a fee waiver.

37. On February 9, 2018, ICE sent a boilerplate letter to Muslim Advocates stating that the Request submitted was "too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency" and that accordingly, ICE refused to process the Request.

38. Even though the original letter was appropriately specific, Muslim Advocates, in response to ICE's letter, submitted a revised version of its FOIA request, augmenting it with further detail. ICE failed to respond to the Second ICE Request for over a month.

39. On March 6, 2018, Muslim Advocates emailed the ICE FOIA Office seeking confirmation of receipt of the Second ICE Request and stating that FOIA required a determination by March 14, 2018 or 20 business days after the revised request was submitted.

40. On March 15, 2018, the ICE FOIA Office sent a response to the Second ICE Request, claiming that the Second ICE Request submitted on February 13, 2018 was received in

their office over a month later on March 15, 2018. The ICE FOIA Office claimed once more in a boilerplate letter that the Second ICE Request was "too broad in scope, did not specifically identify the records which you are seeking, or only posed questions to the agency."

41. Plaintiff's Second ICE Request sought a narrow subset of records pertaining to denaturalization and Operation Janus, listing specific types of records sought, and posed no questions to ICE.

42. ICE's categorical denials of Muslim Advocates' Requests obstruct public access to agency records and are squarely at odds with the purpose of FOIA.

43. On April 16, 2018, Muslim Advocates timely appealed the ICE FOIA Office's refusal to respond to the Second ICE Request to ICE's Office of the Principal Legal Advisor in the Government Information Law Division, explaining that courts have repeatedly held that agencies have a duty to construe FOIA requests liberally and that a refusal to do so violates FOIA. *See* Ex. C. Muslim Advocates also cited to ICE's duty under FOIA to exert a "reasonable amount of effort" and utilize "common sense" when interpreting FOIA requests.

44. Under the statutory 20-day time limit for responding to an appeal, ICE's determination with respect to Muslim Advocates' appeal was due by May 7, 2018.

45. As of the date of this filing, over three months after that deadline, the Office of the Principal Legal Advisor has neither responded to the appeal nor issued a determination.

46. A complete copy of Muslim Advocates' correspondence with ICE is attached hereto as Exhibit C.

### 3. Exhaustion of Administrative Remedies

47. Despite their clear obligations under FOIA, Defendants have not provided any substantive determination in response to the Requests or appeals submitted nor released any records responsive to the Requests within the statutory timeframe.

48. OIP has failed to timely adjudicate Muslim Advocates' appeal of DOJ – Civil Division's invocation of Exemptions 7(A) and 7(E).

49. ICE has wholesale and improperly refused to process Plaintiff's Requests. The Government Information Law Division has failed to timely adjudicate Muslim Advocates' appeal of ICE's refusal to process the Second ICE Request.

50. Because Defendants have not complied with the statutory time limits set forth in the FOIA statute, Plaintiff's administrative remedies are considered exhausted under 5 U.S.C. § 552(a)(6)(C)(i). *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Freedom of Information Act**
**5 U.S.C. § 552(a)**
**Against DOJ**

51. Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if set forth fully herein.

52. Defendant DOJ has violated 5 U.S.C. § 552(a)(6)(A) and applicable regulations promulgated thereunder by improperly withholding documents from Plaintiff without providing reasons for its determination.

53. 5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to Plaintiff because Defendant DOJ continues to flout FOIA and improperly withhold agency records. Defendant DOJ's refusal to reach a determination on Plaintiff's Request and release responsive documents prevents Plaintiff from properly advising impacted individuals and from educating the public about Operation Janus and other denaturalization efforts. Defendant DOJ's withholding of responsive documents will continue to cause Plaintiff irreparable injury.

54. 28 U.S.C. § 2201 authorizes declaratory relief because an actual and justiciable controversy exists regarding Defendant's improper withholding of agency records in violation of FOIA.

**SECOND CAUSE OF ACTION**
**Violation of the Freedom of Information Act**
**5 U.S.C. § 552(a)**
**Against ICE**

55. Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if set forth fully herein.

56. Defendant ICE has violated 5 U.S.C. § 552(a)(6) by inappropriately refusing to process Plaintiff's proper requests and by failing to make a determination on Plaintiff's appeal within 20 days.

57. Defendant ICE's failure to timely release agency records in response to Plaintiff's Request and Second ICE Request violates 5 U.S.C. § 552(a)(3)(A).

58. Defendant ICE has violated 5 U.S.C. § 552(a)(3)(C)-(D) by failing to make reasonable efforts to search for records responsive to Plaintiff's requests to ICE.

59. 5 U.S.C. § 552(a)(4)(B) authorizes the grant of injunctive relief to Plaintiff because Defendant ICE continues to flout FOIA and improperly withhold agency records. Defendant ICE's refusal to reach a determination on Plaintiff's Request and release responsive documents prevents

Plaintiff from properly advising impacted individuals and educating the public about the ramifications of Operation Janus and other denaturalization programs. Therefore, Plaintiff will continue to suffer irreparable injury from Defendant ICE's withholding of government documents subject to Plaintiff's Request to ICE in defiance of FOIA mandates.

60. 28 U.S.C. § 2201 authorizes declaratory relief because an actual and justiciable controversy exists regarding Defendant's improper withholding of agency records in violation of FOIA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Muslim Advocates respectfully prays that this Court:

A. Enter judgment that Defendants DOJ – Civil Division and ICE's failure to timely adjudicate Plaintiff's administrative appeals violates FOIA;

B. Enter judgment that Defendants' unlawful withholding of the records requested violates FOIA;

C. Enter an order requiring Defendants to immediately release any and all responsive, non-exempt records or reasonably segregable portions of records to Plaintiff;

D. Enter an order requiring Defendant DOJ – Civil Division to immediately release a *Vaughn* Index of any responsive records withheld;

E. Award Plaintiff their reasonable costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E); and

F. Award such other further relief as the Court may deem just and proper.

DATED: August 23, 2018

Respectfully submitted,

/s/ Johnathan Smith
Johnathan Smith (D.C. Bar No. 1029373)
Sirine Shebaya (D.C. Bar No. 1019748)
Nimra H. Azmi*°
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043
Tel: (202) 897-2622
Fax: (202) 508-1007
johnathan@muslimadvocates.org
sirine@muslimadvocates.org
nimra@muslimadvocates.org

** application for* pro hac vice *admission forthcoming*
*°admitted in New York only; supervised by members of the D.C. Bar*